GREEN and wife *vs.* PUTNAM and wife and others.

If a deed is delivered as an escrow, it does not take effect until the condition is performed and the deed is delivered over to the grantee; and in the mean time the estate does not pass, but remains in the grantor.

A widow entitled to dower in an undivided share of premises held in common, even before the assignment of her dower, is a necessary party to a suit in chancery for the partition of the premises.

A widow is not entitled to dower in a vested remainder in fee belonging to her husband, limited on a precedent estate for life.

A right of dower, before assignment, is a right resting in action only. The widow may release it, but she cannot convey or assign it.

A widow, until the assignment of her dower, has no estate in the land, out of which such dower arises.

Green *v.* Putnam.

Where one tenant in common lays out money in improvements on the estate held in
common, although the money so expended does not in strictness constitute a lien
on the estate, yet a court of equity will not grant a partition without first directing
an account, and a suitable compensation; or else, in the partition, it will assign to
such tenant in common that part of the premises on which the improvements have
been made.

To entitle a tenant in common to an allowance, on a partition in equity, for improve-
ments made by him on the premises, it is not necessary for him to show the assent
of his co-tenants to such improvements, or a promise on their part to contribute
their share of the expenses; nor a previous request to join in the improvements,
and a refusal.

A grantee of the tenant in common who made the improvements on the premises,
will be entitled to the same compensation for the improvements which the tenant
in common himself would have been entitled to, had he continued the owner of an
undivided share of the premises.

IN EQUITY. This cause was heard, on the pleadings and
the testimony introduced by the parties, on the hearing. The
bill was filed for a partition of a farm of about 100 acres of land,
in the town of Milton in the county of Saratoga. The complain-
ant, Hannah Green, claims, as devisee of her father, Daniel
Thomas, one equal moiety of the farm. Daniel Thomas died
seised of the same, in April, 1825. By his will, made and pub-
lished previous to his death, he devised and bequeathed to his
wife Eunice, the use of all his real and personal property, during
her natural life; and, after her decease, he devised and bequeath-
ed all such real and personal estate to his son Freeman Thomas,
and his daughter Hannah Thomas, (one of the complainants,)
their heirs, executors and assigns, forever. Freeman Thomas
and his wife, on the 31st of October, 1825, conveyed all his
right and interest in the farm to Mindwell Bridges, the mother-
in-law of Freeman, subject to the life estate of Eunice Thomas.
Mindwell Bridges, on the 8th of March, 1826, executed and deliv-
ered to George Peck a mortgage of all her right and interest in
the farm, to secure the payment of $1300. This mortgage was,
in 1834, foreclosed in chancery; and George Peck, the mort-
gagee, became the purchaser of the premises, at the mortgage
sale, subject to the life estate of Eunice Thomas therein; and
received a deed therefor. George Peck, after such purchase,
and in 1839, died intestate, seised of the premises purchased by

him at such mortgage sale, leaving Elizabeth, wife of Rockwell Putnam, Eleanor, wife of William Kidd, James E. Peck and George Peck, his heirs at law. James E. Peck, after the death of his father, and on the 12th of June, 1839, conveyed all his interest in the premises to Betsey Peck, the widow of George Peck. Betsey Peck, on the 26th of June, 1839, conveyed such interest to William Kidd and George Peck. Eunice Thomas died on the 9th of August, 1846. Putnam and wife, Kidd and wife, and George Peck and his wife, are the parties defendants to the plaintiffs' bill. The defendants, in their answers, deny that the plaintiffs have any interest in the premises; and allege that Hannah Green, previous to the conveyance of Freeman Thomas to Mindwell Bridges, conveyed by deed, on or about the 31st of October, 1825, all her right, title and interest in the premises, to Freeman Thomas. And the answers of the defendants also allege, that the money advanced by George Peck, on the mortgage executed and delivered to him by Mindwell Bridges, was expended in the erection of a new dwelling house on the premises; and they insist, if a partition is decreed, that they are entitled to an account of, and allowance for, the moneys expended, by or under the direction of either Mindwell Bridges or Freeman Thomas, in necessary, permanent and beneficial improvements upon said premises. The bill alleges that Betsey Peck, the widow of George Peck, conveyed all her right and interest in the premises, by her deed on the 26th of June, 1839, to William Kidd and George Peck; but the answers do not admit that Betsey Peck, by such deed, conveyed her right of dower in the premises, to William Kidd and George Peck. And Putnam and wife and George Peck and wife, in their answer, insist that the whole of the premises, on the death of George Peck the elder, descended to his heirs at law, and became vested in them in fee, subject to the life estate of Eunice Thomas, and also subject to the right of dower of Betsey Peck. The bill alleges, and the answer admits, that the share of the defendant George Peck, in the premises, is subject to the lien of a mortgage thereon, executed by said George Peck and his wife to William Kidd; that the share of William

Kidd and wife is incumbered by a mortgage thereon, executed by them to the said George Peck; and that there are no other liens or incumbrances, either general or specific, on the premises, or any share therein. The deed from Betsey Peck to George Peck and William Kidd was not introduced in evidence, on the hearing; nor was any evidence given of its contents. Freeman Thomas, who was examined as a witness by the defendants, testified that, after his father's death, he erected on the premises a dwelling house, to be used as a tavern, in the place of one which was consumed by fire, in the lifetime of his father, and expended in its erection moneys advanced by John Kelly, on a mortgage given upon the premises, by the witness and his sister Hannah; and also moneys of his own: and that the Kelly mortgage was paid up, out of the moneys advanced by George Peck the elder, on the mortgage given by Mindwell Bridges. Freeman Thomas also testified, that he acted as the agent of Mrs. Bridges. It appeared from the evidence, that the deed of the plaintiff Hannah Green to Freeman Thomas, of the date of the 31st of October, 1825, set up in the answers of the defendants, was executed in order to make her a competent witness, in a suit between the estate of her father and one Elliot; that the deed was left with Thomas Palmer as an escrow, and was not to be delivered to Freeman Thomas, or to be operative as a deed, unless the suit with Elliot proceeded; nor unless Freeman Thomas paid her $500, for the same; that the deed was to be of no effect, unless the suit went on and the $500 was paid; and that the suit with Elliot being afterwards settled, and the $500 not having been paid to Hannah, the deed was, on her request, delivered up to her by Mr. Palmer. The mortgagee George Peck, before he received the mortgage from Mrs. Bridges, knew that Freeman Thomas had agreed to pay his sister Hannah $500, for the deed of her half of the farm; and that no part of that sum had been paid to her. When Freeman commenced the erection of the house on the premises, to be used as a tavern, and while it was being erected, his sister Hannah objected to the size of the building, and insisted that it was too large; that it was larger than was neces-

sary; and said to Freeman Thomas, that if he put up so large a building she would have nothing to do with it, and would pay no more money, and would not borrow any more money to be expended in its erection.

*Geo. H. Scott*, for the plaintiff.

*W. L. F. Warren*, for the defendants Putnam and wife and George Peck and wife.

*Geo. H. Mumford*, for the defendants Kidd and wife.

PAIGE, J.   No title passed, under the deed executed by Hannah Green, one of the plaintiffs, to Freeman Thomas.   It was not delivered to Freeman Thomas.   It was delivered by Hannah to Thomas Palmer, expressly as an escrow; and it was not to be. delivered to Freeman Thomas, unless the suit with Elliot went on, nor unless Freeman Thomas paid Hannah $500.   The delivery depended upon the performance, not only of one, but of both of these conditions.   Neither of the conditions was performed.   The suit with Elliot did not go on, and the money was not paid.   By the settlement of the suit with Elliot, the main object of the conveyance—the making Hannah a competent witness—failed.   The absolute delivery of a deed to the grantee, or to a stranger for him, is essential to its validity.   If delivered as an escrow, it does not take effect until the condition is performed, and the deed is delivered over; and in the mean time the estate does not pass, but remains in the grantor. (6 *Wend.* 669.   12 *John.* 421.   6 *Cowen*, 619.   2 *Hill*, 299.) The deed, in this case, was not to be delivered to the grantee, nor to take effect, until both the conditions were performed.   The performance of one of the conditions, without the performance of the other, did not authorize the delivery of the deed to the grantee.   The witness Palmer testifies, "that if the suit did not go on, the deed was not to take effect; as the object of the deed was to make Hannah a witness in that suit."   This suit having been settled by Freeman Thomas, Palmer had no

authority to deliver the deed to him. Palmer would not have been authorized to deliver the deed to Thomas, even upon his payment of the $500. Thomas could not, therefore, under any circumstances, have been entitled to the deed, and Palmer properly returned it to Hannah. The plaintiff Green and Hannah his wife, are therefore seised in fee, in right of Hannah, of one undivided moiety of the premises in question; and the defendants, as the representatives of George Peck the elder, and as grantees of James E. Peck, are seised in fee of the remaining undivided moiety. George Peck the elder, as the purchaser, under his mortgage against Mindwell Bridges, acquired the title of Mrs. Bridges in the premises; which was only an estate in fee, in one undivided moiety of the premises, subject to the life estate of Eunice Thomas.

There is no evidence in the case, that the plaintiff Hannah Green, at the time of the execution of the mortgage of Mindwell Bridges to George Peck the elder, knew that it was intended by them that such mortgage should cover the whole premises; or, that Peck advanced the money on that mortgage, upon the faith of the validity of her deed to Freeman Thomas; or even that she had, at the time, any knowledge whatever of the giving of that mortgage. The defendants cannot therefore object that the plaintiffs are estopped from setting up their legal title to the premises, as against them, by Hannah's not disclosing her claim to the premises, to Peck, at the time of the execution of his mortgage. There is no evidence of any fraudulent concealment from Peck, by Hannah, of her title to the premises, or of any intent, on her part, to commit a fraud upon him; but there is sufficient evidence in the case, to show, that Peck had sufficient notice to put him on inquiry, as to Hannah's title. Previous to receiving his mortgage from Mrs. Bridges, he knew that Freeman Thomas had agreed to pay Hannah $500 for a deed of her half of the farm, and that no part of the sum had been paid to her; he also knew that no deed, from Hannah to Freeman Thomas, of her half of the farm, had been recorded. In my judgment Peck, before he advanced any money on Mrs. Bridges' mortgage, had notice of the rights of the plaintiff

Green v. Putnam.

Hannah Green, in the premises in question ; or had sufficient notice to put him on inquiry, as to such rights.

If Betsey Peck, as the widow of George Peck the elder, had a right of dower in one moiety of the premises, as alleged in the answer of Putnam and wife, and of George Peck and wife, she ought to have been made a party to the suit ; to enable the court, in case a sale is decreed, to give the purchaser a perfect title to the premises. (1 *Paige*, 469, 472. 2 *R. S.* 318, §§ 5, 6. *Id.* 329, §§ 79, 80. 3 *Paige*, 658. 7 *Id.* 410.)

During the life of George Peck, Eunice Thomas had a life estate in the premises. She survived George Peck. George Peck, therefore, had, during coverture, only an estate in fee in remainder, in a moiety of the premises, expectant on the determination of the life estate of Eunice Thomas. And, it seems to be well settled, that a wife is not entitled to dower, in a vested remainder in fee belonging to her husband, limited on a precedent estate for life. To entitle the wife to dower, her husband must have been seised of real estate in fact or in law, in fee simple, at some time during coverture. The seisin must be an actual corporeal seisin, or a right to such seisin. There can be no seisin in deed or in law, of a vested remainder limited on a precedent freehold estate. (1 *Co. Lit.* 32, *a.* *Cruise's Dig.* ch. 2, *tit. Dower*, §§ 12, 13, 15, 16. *Id.* ch. 3, §§ 19, 20. *Blood* v. *Blood*, 23 *Pick.* 80. *Eldredge* v. *Forrestal*, 7 *Mass. Rep.* 253. *Fisk* v. *Eastman*, 5 *N. Hamp. Rep.* 240. *Moore* v. *Esty*, 5 *Id.* 469.)(a)

If Betsey Peck had been entitled to dower, her conveyance to William Kidd and George Peck, even if it in terms conveyed all her right and interest in the premises, would not have transferred her right of dower in the whole premises, to the grantees. A right of dower, until legally assigned, is a right resting in action only. The widow may release it, but she cannot, before her dower is assigned, invest another person with the right to maintain an action for it ; nor can she convey or assign it.

(a) See also *Dunham* v. *Osborn*, (1 *Paige*, 634;) *Reynolds* v. *Reynolds*, (5 *Id.* 161;) *Matter of Cregier and others,* (1 *Barb. Ch. Rep.* 598.)

Green *v.* Putnam.

Until the assignment of her dower, she has no estate in the land. (*Cruise's Dig. tit. Dower*, ch. 4, § 2. 13 *Wend.* 526. 10 *Id.* 414. *Id.* 528. 2 *Cowen*, 651. 17 *John.* 168. 20 *Id.* 413.)

The only remaining question is, whether the defendants are entitled, upon the partition or sale of the premises, to an allowance for the moneys expended by Freeman Thomas and Mindwell Bridges in the erection of the new dwelling house on the premises. The defendants claim that, as George Peck the elder derived his title to the premises from Freeman Thomas and Mindwell Bridges, they, as his heirs at law, are entitled to an allowance for all the moneys expended by Freeman Thomas and Mrs. Bridges, in necessary, permanent, and beneficial improvements upon the premises.

Where one tenant in common lays out money in improvements on the estate, although the money so expended does not, in strictness, constitute a lien on the estate, yet a court of equity will not grant a partition, without first directing an account, and a suitable compensation : or else in the partition it will assign to such tenant in common, that part of the premises on which the improvements have been made. (1 *Story's Eq. Jur.* §§ 655, 656, *b.* *Swan* v. *Swan*, 8 *Price*, 518. *Town* v. *Needham*, 3 *Paige*, 546, 553. *Id.* 470.) To entitle the tenant in common to an allowance on a partition in equity, for the improvements made on the premises, it does not appear to be necessary for him to show the assent of his co-tenants to such improvements, or a promise, on their part, to contribute their share of the expense ; nor is it necessary for them to show a previous request to join in the improvements, and a refusal. Such a request and refusal are undoubtedly necessary to sustain an action of assumpsit at law, by one tenant in common against another, for repairs, or the common law writ, *de reparatione facienda.* (*Mumford* v. *Brown*, 6 *Cowen*, 476. 4 *Kent's Com.* 370, 2d ed.) The defendants have no remedy by action at law, nor any direct remedy by bill in equity, against the plaintiffs, for their share of the expense of the dwelling house erected by Freeman Thomas and Mrs. Bridges ; nor

have Thomas and Mrs. Bridges any such remedy; nor would they have had any such remedy had they continued the owners of the moiety of the premises.

At common law, one tenant in common could not even compel his co-tenant to account to him for taking more than his share of the profits, unless he could show he had made him his bailiff, or receiver. (*Co. Lit.* 200, *b.* 4 *Kent's Com.* 369, 2d *ed.*) This defect of the common law has been remedied by statute. An action of account at law can now be maintained, where one tenant in common, or joint tenant, has received more than his just proportion of the profits. (1 *R. S.* 750, § 9. 4 *Anne,* *ch.* 16.)

The statute of limitations is, no doubt, applicable, (as the plaintiff's counsel contends,) to an action at law, by one tenant in common, against his co-tenant for repairs; or to an action of account or bill in equity, between tenants in common, where one tenant in common has received more than his just proportion of the profits. (7 *John. Ch.* 117.) But it is not applicable to the equitable right of a tenant in common to an allowance for improvements made by him, on a partition of the premises, in equity. The right of a tenant in common to a suitable compensation for improvements made on the premises held in common, where there is no promise on the part of his co-tenant to contribute to the expense, is an equitable right, merely; amounting to an equitable interest in the premises, which a court of equity will recognize, in a decree for a partition. And a court of equity will not grant a partition, without allowing to the party the value of such interest. The money expended in the improvements does not, in strictness, create a lien on the premises; but equity will so far regard it as a lien as to refuse to interfere, unless compensation is made. (*Story's Eq. Jur.* 655, 656, *b.* 8 *Price,* 518.) The only remedy of the tenant in common who makes the improvements is, by a suit in equity, for a partition of the premises. The statute of limitations has, therefore, no application to the equitable claim for compensation for such improvements.

In *Town* v. *Needham,* (3 *Paige,* 546, 548,) where one tenant

in common, supposing himself to be legally entitled to the whole premises, erected valuable buildings thereon ; it was held that he was entitled to an equitable partition of the premises, so as to give him the benefit of the improvements ; or, if that could not be done, that he was entitled to a compensation for those improvements. .

A court of equity administers its relief *ex æquo et bono*, according to its own notions of general justice and equity between the parties. It will adjust, by its decree, all the equitable rights of the parties interested in the premises. It is not restrained as a court of law is, to a mere partition of the lands between the parties, according to their interests in the same, and having a regard to the true value thereof. But it may, with a view to a more perfect partition of the premises, decree a pecuniary compensation to one of the parties, for equality of partition, so as to prevent any injustice or unavoidable inequality. (*Story's Eq. Jur.* §§ 654, 656, *a.* 2 *R. S.* 330, § 83.) So a court of equity will assign to the parties respectively, such parts of the estate as will best accommodate them, and be of the most value to them, with reference to their respective situations in relation to the property before the partition. (*Story's Eq. Jur.* 656, *b.*)

As the defendants derive their title through George Peck the elder, to an undivided moiety of the premises, from Freeman Thomas and Mindwell Bridges, they are entitled to the same compensation for the improvements made by Thomas and Mrs. Bridges on the premises, which the latter would have been entitled to had they continued the owners of such moiety. It appears from the evidence, that a part of the expense of the dwelling house erected by Freeman Thomas, was paid by Daniel Thomas, in his lifetime, and out of his estate, after his death. It also appears that Hannah, when Freeman Thomas commenced the erection of the house, and while it was being erected, objected to the size of the building, and insisted that it was larger than was necessary, and declared to him that if he persisted in putting up so large a building as the one he had commenced, she would have nothing to do with it. If a larger building was erected than was proper and necessary, and if it

**did** not add more to the value of the premises than a building of smaller size would have done, the defendants, especially after this notice from Hannah to Freeman, are only entitled to compensation for the expense of the erection of a building of the proper size. The building having been erected during the existence of the life estate of Eunice Thomas, the defendants are not entitled to compensation for the moneys expended by Freeman Thomas and Mrs. Bridges in its erection, but only to a suitable compensation for such proportion of the value of the building, at the death of Eunice Thomas, as the amount expended by Freeman Thomas and Mrs. Bridges, in its erection, bears to the whole expense of the building. And if the plaintiffs, or either of them, contributed any thing towards the erection of the building, they are entitled to a similar compensation. The value of the building, at the death of Eunice Thomas, must be estimated in reference to the value of a building of the proper dimensions for a farm house on the premises in question, and not for the purposes of a tavern. If any one of the parties has received more than his or her just proportion of the rents and profits of the premises, since the death of Eunice Thomas, or has committed waste on the premises, he or she must account for the same.

A decree must be entered declaring the rights and interests of the parties, in the premises, to be as stated in the bill of complaint. And it must be referred to a referee to inquire and report whether the whole premises, or any lot or separate parcel thereof, are so circumstanced that an actual partition cannot be made without great prejudice to the owners of the same; and if he arrives at the conclusion that a sale will be necessary, he must specify the same in his report, with the reasons which render a sale necessary ; and, in such a case, he must ascertain and report as to the specific and general liens, as required by rule 125. Such referee must also ascertain and report the amounts respectively expended by Freeman Thomas and Mindwell Bridges, and by the plaintiffs, or either of them, out of their own moneys, in the erection of the new dwelling house on the premises, referred to in the answers in this suit, and the

whole expense of the building; and also the value of such building at the time of the death of the said Eunice Thomas, estimated in reference to the value of a building of the proper size for a farm house on said premises, and not for the purposes of a tavern. And such referee must also ascertain and report whether either of the parties to this suit has received more than his or her just proportion of the rents and profits of the premises, since the death of Eunice Thomas; or has committed any waste on the premises. All further questions and directions are reserved until the coming in of the report of such referee.

