Hayes agt. Buckley.

## ONEIDA COUNTY COURT.

### DANIEL HAYES agt. DENNIS BUCKLEY.

*Supplementary proceedings — appointment of receiver — property vests without any assignment.*

Since the Code, the appointment of a receiver, in proceedings supplementary to execution, vests in the receiver *all* the property, both *real* and *personal*, of the judgment debtor, without any assignment.

*Utica, March,* 1877.

*L. W. Fiske,* for receiver and motion.

*Walter Ballou,* for judgment debtor, opposing motion.

R. D. JONES, *Special County Judge.*— On the sixteenth day of February last, in proceedings supplemental to execution in the above-entitled action, on a judgment recovered therein in this county, and in which county the defendant and judgment debtor resided at the time of issuing the execution to the sheriff of this county, I made an order appointing one Alfred Morling a receiver of the property, equitable interests and things in action of Dennis Buckley, the judgment debtor above named. The order thus made was on a printed blank and contained a clause requiring the judgment debtor to execute, acknowledge and deliver to the receiver a proper and valid assignment and conveyance of all of the lands and real estate of the debtor wheresoever the same might be situated. I did not notice the existence of such a clause in the order when I signed it. After his appointment, Morling duly qualified as such receiver, and received a certified copy of the order

appointing him such receiver, and he thereupon entered upon his duties as such receiver. It now appears from the moving papers in this matter that Dennis Buckley, the judgment debtor, at the time of the service on him of the order for his examination in this matter, owned real estate situated in this county, and also that he owned the same at the time of the appointment of such receiver in this matter; that since then the said receiver has requested said judgment debtor to convey such real estate of said judgment debtor to him, the said receiver, and that the judgment debtor has refused to comply with such request, and now refuses to convey or assign such real estate to said receiver, as requested. On the fifteenth day of March, instant, an order was obtained by the attorney of the receiver from me, requiring said judgment debtor to show cause before me this day why he should not be punished as for contempt in refusing to execute such assignment and conveyance in obedience to the terms and requirements of said order made by me on the sixteenth day of February last, and said clause therein contained, all other misconduct charged in said order to show cause is now waived, and the motion to punish for contempt is now vested solely on such refusal and omission of the judgment debtor to convey and assign his real estate to the receiver, as requested.

It is urged, on the part of the receiver, that I have the right to direct such conveyance and assignment to be made, and for such refusal and omission to convey and assign the real estate, I have the right to adjudge the judgment debtor guilty of contempt and punish him therefor.

The counsel of the judgment debtor, in opposition to the motion, maintains that I have not the right to direct such assignment and conveyance to be made nor to punish for such refusal; that the title to said real estate passed to the receiver in virtue of his appointment as such receiver, his qualifying and receiving from the clerk of this county a certified copy of said order appointing him such receiver, and that a conveyance or assignment of such real estate to the receiver

Hayes agt. Buckley.

by said judgment debtor is not necessary to vest the title thereof in such receiver.

I think the position assumed by the judgment debtor's counsel is correct, and that I must deny the motion. Now, as this is the third or fourth motion made before me involving the same precise question, and each has been disposed of by me in the way that I have indicated I must do with this, I have thought it but proper to present my views in writing upon the question, and to the end that the question may be set at rest so far as I am able to do the same. No case has yet fallen under my observation holding that title to real estate does not pass to a receiver appointed in proceedings supplemental to execution without a conveyance or assignment thereof to the receiver by the debtor, except the case of *Moak, Receiver,* agt. *Coats* (33 *Barb.,* 498), which at first blush, seemingly, does so hold. If the law required such assignment or conveyance to cause the title thereof to pass to the receiver, I would not hesitate in holding that I possessed the power to punish the judgment debtor for such refusal, as section 302 of the Code of Procedure would prove broad enough to confer such power on me. The power of the officer there mentioned to punish disobedience of his orders only extends to disobedience of orders which the officer has power to make and enforce. Now, the question arises, have I the power to direct the judgment debtor to convey and assign his real estate to the receiver, and is the receiver vested with the title to such real estate without such conveyance? I think, notwithstanding the case of *Moak* agt. *Coats* (*ante*):

*First.* That I, as an officer at chambers, had not the power to make an order directing such conveyance, and that that clause contained in said order appointing said receiver, requiring such conveyance and assignment, is inoperative and void, and the insertion thereof in the order was in excess of my judicial power.

*Second.* That the receiver became vested with the title of

said real estate without such conveyance or assignment; that his appointment, the filing and recording of the order, his giving the required bond, its approval, and his receiving a certified copy thereof from the clerk of this county, vested him with the title of said real estate.

I have stated that no case has fallen under my observation holding a conveyance or assignment necessary, except *Moak* agt. *Coats*, which at first blush, seemingly, does. I think it conceding too much to admit it to have been the opinion of the court in that case that a conveyance or assignment was necessary. I think it safer to say that CAMP-BELL, J., in his written opinion in the case of *Moak* agt. *Coats*, said such was the law. From an examination of the opinion, it is, it seems to me, impossible to determine upon what precise point the case was decided by a majority of the court. CAMPBELL, J., in the latter part of his opinion, says : " There are other grounds which, I think, would be fatal to the plaintiff's right to recover. He represents a creditor who was a creditor by reason of another debt, and who received payment of the prior debt out of the proceeds of sale paid by the defendant ; and, after having proved his prior debt before the referee appointed by the court, at the time of making the order for the sale under which the defendant purchased, I think he should be treated as a party to those proceedings, and should now be estopped from disaffirming them through his receiver." To enable me to fully understand upon what facts such statement was made by CAMPBELL, J., in his opinion, I procured a copy of the printed case, and have examined the same, and I find such facts to be as follows,·viz. : On the 30th day of September, 1850, one Horace Coats, of Otsego county New York, died intestate, leaving him surviving, Catharine Coats, his wife, and two minor children ; that, at the time of his decease, said Horace Coats was the owner of the lands and premises which were subsequently sold and conveyed to the defendant in the case, and a portion of which the receiver

sought to recover; that said Catharine Coats was afterwards appointed the sole executrix of the estate of her deceased husband; that she and the two minor children continued to reside together on the premises until the defendant in the action went into possession thereof, which was April 1, 1857; that, at the time of his decease, Horace Coats owed some debts; on the 11th day of September, 1856, Catharine Coats confessed a judgment for $127.54, in the supreme court of this state, in favor of one William Duffin; that the debt for which the judgment was confessed was for goods and groceries furnished her from Duffin's store, from May 26, 1855, to July 23, 1856; that, on the 13th day of September, 1856, such judgment was docketed in the county clerk's office of Otsego county; execution in the usual form was issued thereon on the 15th day of September, 1856, and returned unsatisfied on the 17th day of September, 1856. On the 23d day of September, 1856, on a proper affidavit, judge Gould granted an order, in proceedings supplemental to execution, against said Catharine Coats, on said judgment, requiring her to appear and answer before N. C. Moak, as referee, on the 30th day of September, 1856; she appeared and was examined under such order; and the referee's report showed the discovery, on such examination, of her right to dower in said premises. On the 17th day of October, 1856, judge Gould appointed said Moak receiver of her property; and that, on the 11th day of November, 1856, the bond of said receiver was duly approved, and the same was on that day duly filed in the clerk's office of Otsego county. On the 17th day of February, 1857, said Moak, in the name of said Catharine Coats, by him as receiver, petitioned the surrogate of Otsego county for the appointment of a special guardian to protect the interest of said two minor children in proceedings for the admeasurement of the dower of Catharine Coats; and on same day the surrogate of said county granted an order for that purpose, appointing one E. M. Harris such special guardian. On same day a petition

was presented to said surrogate for the admeasurement of such dower, with due proof of service on said special guardian. On the 16th day of April, 1857, said surrogate made an order appointing three commissioners, therein named, to make admeasurement of dower, and they duly took the oath required of them. On the 3d day of June, 1857, the commissioners made their report admeasuring her dower, and the report was filed and confirmed by the surrogate on the 8th day of June, 1857. It appears, from admissions in the case, that no notice of the proceedings before the surrogate was given to the defendant in the case, who is Moses Coats. On the 10th day of July, 1855, a petition, bearing date July 9, 1855, of the two infants by Catharine Coats, their mother, and next friend, was presented to the Otsego county court for the appointment of a special guardian of the two infants, for the sale of the said real estate of the two infants; and she alleged in the said petition that she was willing to, and desired to, join in the sale of said real estate, and thereby release her dower interest in the same. She also alleged that she was appointed the administratrix of the estate of Horace Coats, deceased, and that the personal property of said deceased was insufficient to pay the debts of said estate, and that there were due from said estate, for debts unpaid of the estate, about $225. She further alleged that she and the two infants had, since the decease of said Horace Coats, lived together as one family, and were then living together, and that they had necessarily incurred debts and liabilities for their maintenance and the education of said two infants, and for which they had no means of paying, except out of the proceeds of the sale of said real estate, and which debts were due to divers parties, who had given them credit to the amount of about $800, which should be equally shared between them, as they three had each had their necessary support out of the same, and that they were willing that all of such indebtedness should be first paid out of the moneys arising from the sale of said real estate, if

a sale thereof should be, ordered by the court. That the premises were free from incumbrances, except the said amount of moneys unpaid of the debts owing by said Horace Coats, at the time of his decease. And she averred that neither of the said two infants or her were in want of any portion of the principal sum to be obtained for said real estate, except that they desired that the special guardian to be appointed should be directed first to pay, out of the moneys arising upon such sale of said real estate, the said indebtedness of said real estate, and the said indebtedness of about $800 of the three, to wit: her and the two infants, made as aforesaid, the indebtedness to be ascertained by a referee to be appointed therein. She also stated in said petition that she did not wish to receive the then present value of her dower interests in said premises, but that she wished to have one-third part of the avails of the sale of said real estate (after first paying the said indebtedness of herself and the said infants) invested, the principal sum thereof for the use of said infants, at her decease, and that the interest money arising therefrom might be paid over annually to her during her lifetime. The reason for the presentation of the petition, as stated, were briefly these: That the three were unable to manage the lands so as to make them a comfortable support, and that they had no other means of support, or for the payment of said indebtedness, and that the premises were fast getting out of repairs, and they were unable to repair the same; and that, in their opinion, the money arising from the sale thereof, invested, would be more productive to them. &ast; &ast; &ast;

On the same day an order was made by said county court, appointing Wm. Marks as special guardian, for the purpose of conducting such sale of the real estate, and the matter was, by said order, referred to Charles McLean, to ascertain the truth of the facts of said petition, and whether a sale would be beneficial, &c., and what amount of moneys were necessary to be paid out of the proceeds of sale to pay said debts due from the estate of said Horace Coats, deceased, and which

were owing by him in his lifetime, and at the time of his decease, and to whom the same was then due, over and above the full amount of the moneys arising from the personal estate of said Horace Coats, deceased, and also to ascertain and report the amount of indebtedness referred to in said petition, created for the necessary support, maintenance and education of said petitioners, to wit: The two infants and her, Catharine Coats, and the names of each of the persons to whom such indebtedness existed, and the amounts due to each of such persons.

On the 5th day of February, 1856, said McLean, referee, reported to said court that he was satisfied that all the material facts of the petition were true, and that a sale of the whole premises would be for their benefit; and he further reported that the amount of money necessary to pay the debts of Horace Coats, deceased, which were owing by him at the time of his decease, and for which there was no personal property belonging to his estate to pay, and which had been advanced by and was due to Harmon Howland, was the sum of $239.07.

That the amount of the indebtedness referred to in said petition of said petitioners, created for the necessary support and maintenance and education of said petitioners, and the names of the several persons to whom such amounts were then due, and the several amounts were as follows: The name and amount of each being given and amounting in the aggregate to .$1,218.68. In the list appears said William Duffin for nineteen dollars and sixty-seven cents. That of said sum of $1,218.68, $979.61 had been incurred for the equal benefit of said infants and their mother, Catharine Coats, and that said sum, with such interest as might accrue thereon, should be first deducted from the whole purchase-price of said lands and one-third part of the remainder invested at interest secured by bond and mortgage, the principal sum to remain during the lifetime of said Catharine Coats and the annual interest thereon to be paid to her annually during her lifetime, and the principal at her

decease should be paid to the said infants in equal portions, or to their heirs or assigns; that said sum of $239.07, with interest thereon, should be paid to said Harmon Howland, out of the share of said infants to them remaining, for money by him advanced for the payment of debts due from said Horace Coats at the time of his decease, and he further reported that he had not ascertained the value of her dower interest upon the principles of life annuities for the reason that in the petition she had elected to have one-third of the money arising from the sale of lands, after paying the said indebtedness, invested or secured by bond and mortgage for her during her life, or the annual interest arising from the same, and that she (Catharine Coats) was entitled as the widow of Horace Coats, deceased, to dower in the whole of said lands in which she, by said petition, consented to join in the sale thereof. On the 11th day of February, 1856, an order was made by said court confirming said report of said McLean, and authorizing the special guardian to contract for the sale of the right, title and interest of said infants in said real estate. On the 11th day of February, 1856, a contract was entered into for the sale thereof, and the guardian also included in the agreement the sale of the interest of Catharine Coats therewith for the sum of $3,230, to be paid as follows: The sum of $1,400 in cash and so much more as the purchaser (Moses Coats, the defendant in *Moak* agt. *Coats*) might see fit to pay on the 1st day of April, 1856, and the remaining portion of the purchase-money to be then secured by bond and mortgage of said Moses Coats, payable as therein provided.

On the said 11th day of February, 1856, said contract was reported to the court.

On the same day an order was made by said court confirming said report and authorizing a conveyance in pursuance thereof, and directed the payment of said debt of said estate after the costs of proceedings, fixed at eighty dollars, were paid, and that out of the balance he pay said sums of money due the creditors of said infants and Catharine Coats,

amounting to said sum of $979.61, and such accrued interest as might be found due as the same were set forth in said report of said McLean, and take receipts therefor from each person, and that he file the same with his report; that the sum of $239.07, reported as being due to said Harmon Howland from the estate of said Horace Coats, deceased, be deducted from the shares of said infants, and that the remaining sum of money, after deducting the costs and expenses and the payment of said sum so reported by said referee, except the sum of $239.07, one-third part thereof be invested in bond and mortgage upon unincumbered real estate affording ample security at times for the same during the lifetime of said Catharine Coats, paying interest annually thereof to her during her lifetime, and at her decease the principal sum thereof to be paid in equal portions to said infants, their heirs or assigns, and the remainder to be securely invested on bond and mortgage for benefit of said infants, &c. The said Catharine Coats to receive no benefit of said order until she should execute and deliver to said Moses Coates a sufficient release of all her dower interest in the lands and premises described in the petition.

A deed bearing date February 15, 1856, between special guardian for said infants, reciting the proceedings theretofore had, and containing a recital that said Catharine Coats joined in the same for the purpose of releasing her dower interest in the premises, was executed by such special guardian on the 31st day of March, 1856. She did not execute it until the 20th day of February, 1857, having up to that time failed to do it. On the 1st day of April, 1857, said Moses Coats executed a bond and mortgage to secure $1,700 of said purchase-money.

On the 1st day of July, 1857, said special guardian made his report, showing that the deed had been executed by him for the infants at the time aforesaid, and that said Moses Coats was ready to perform his part of the agreement, but that said Catharine had failed to execute the same, or to sur-

render the possession of said premises to Moses Coats until the 1st day of April, 1857, and that she had joined in the execution of said deed a short time prior to said 1st of April, 1857, and that said Moses Coats, on the 1st day of April, 1857, in pursuance of said agreement, had paid him in cash the sum of $1,500 on said premises, and, on the same day, had executed his bond and mortgage to secure the payment of the remaining sum of $1,700, in pursuance of said agreement, and that of said sum of $1,700, the sum of $651.67 the said Catharine Coats was entitled to the annual interest thereon during her lifetime, and that out of the money so paid to him by said Moses Coats he had paid the costs and the several amounts to individuals, as directed by said order, and that he had taken their receipts therefor, which were annexed to his report and forming a part thereof, amounting in the whole to the sum of $1,403.31; that he had disposed of the balance as stated therein, which is not material here to recite.

Among said receipts attached to said report is one in the following words and figures, to wit:

### "OTSEGO COUNTY COURT.

| | |
|---|---|
| "In the matter of the petition of JANE L. Coats and ALTHERA Coats, infants, and Catharine Coats, their mother. | $21.47. |

"Received of William Marks, special guardian for the above-named infants, twenty-one dollars and forty-seven cents, in full for the amount directed to be paid by him to me, by an order of this court, bearing date the 11th day of February, 1856.   Dated April 1, 1857.

"(Sd.)      WM. DUFFIN."

On the 7th day of July, 1857, an order was made by said court confirming in all things said report of said special guardian.   It is not pretended in the case that the William Duffin, the plaintiff in the judgment upon which Moak was appointed

receiver, is not the same William Duffin who gave the receipt for the twenty-one dollars and forty-seven cents to the special guardian of said infants. It appears from the case that no demand was made of the defendant for possession of the part of the premises assigned as Mrs. Coats' dower until the 30th day of August, 1857. The action was not commenced until as late as October 20, 1857.

There is no evidence or an intimation given in the case that Moses Coats knew of any of the proceedings on the judgment of Duffin against Catharine Coats, or of any of the proceedings before the surrogate with reference to Catharine Coats' dower interest, until after he had paid his money and taken the deed. Mr. Moak, the receiver, was simply the representative of Duffin, and he was bound by the acts of Duffin. We have a right to presume, that as early as between the 11th day of July, 1855, and the 5th day of February, 1856, Duffin knew of the proceedings for the sale of the real estate. No money had then been parted with by defendant Moses Coats; and none was parted with by him, for the real estate until the 1st day of April, 1857, notwithstanding such knowledge on the part of Duffin with reference to said proceedings for the sale of the real estate, including therein the dower interest of Mrs. Coats, he laid quietly by, and on the 1st day of April, 1857, fully ratified it. I have said that we have a right to presume Duffin knew of the proceedings at some time between July 11, 1855, and the 5th day of February, 1856. I conclude so from the fact that his claim, proven before the referee, was proven within that time, and the presumption is that he proved it himself. There is no evidence or statement in the case showing that he did not. The presumption that he did know of it is further strengthened by the receipt of the money by him and his giving his receipt therefor on the 1st day of April, 1857, and in which the proceedings are referred to. By the acceptance of that money from the special guardian he accepted a portion of the proceeds of her right of dower, for she bore the payment of that claim, with

Hayes agt. Buckley.

others, with the infants, and her share of the debts thus paid was paid out of the proceeds of her dower interest, with full knowledge of that fact. We must assume Duffin went before the referee, McLean, and proved his claim of nineteen dollars and sixty-seven cents and interest, for the purpose of enabling him to get a portion of the money paid by Moses Coats for such dower interest of Mrs. Coats. He took the money without disclosing the fact that he, through the receiver, claimed any interest in what had produced it. The taking of it was as fatal to the rights of the receiver as if the receiver himself had received a portion of it on the debt represented by him. His acts were the acts of the receiver for all intents and purposes in the matter, as the receiver was simply his representative for the collection of the judgment.

Did he, Duffin, not, by his own act in receiving the twenty-one dollars and forty-seven cents, as he did, fully ratify the sale by her of her dower interest, and her release thereof to Moses Coats? I think he did, pretty effectually, too. It did not lie with him to stand by silently and see Moses Coats pay his money for her dower interest, then go into court and get a part of it on a debt of his, without even questioning the legality of the sale producing it, and then, through his representative, the receiver, come into another court and say in that court that his representative, the receiver, was not bound by his, Duffin's, acts in the county court; that although he had taken a portion of the money of Moses Coats, under an order of the county court, he yet had the right to require him to surrender what he, Moses Coats, had paid for in good faith and he, Duffin, had shared in the proceeds of. It is not necessary to inquire whether the order of the county court was valid or not; Duffin was not in a position to question it. If he was not, the receiver was not.

If a party desires to avail himself of the benefit of such an order, and does do it, he must, and will in all courts, be held to thereby ratify the order in whole. He cannot ratify it in part, and disaffirm it in part. With such a state of facts in

the case, I cannot believe the case was decided by the general term on the ground that a conveyance or an assignment was not executed of the dower right to the receiver, and that such was necessary. Supposing one had been executed and delivered, I undertake to say that the effect of such an act on the part of Duffin, upon the rights of the receiver, would have been the same, and been fatal to any such action as he, the receiver, might have brought against Moses Coats in relation to the same. But I am further confirmed in the position that the case was not decided on the ground of a want of conveyance or assignment to the receiver, from the fact that, following in the opinion of CAMPBELL, J., after what I have quoted on the subject, is the statement that he " thinks " there should be judgment for the defendant upon the verdict, for the reason that the plaintiff failed to show title in himself, as against the defendant, a purchaser in good faith, without notice. The rights of the receiver, with reference to such dower interest, was, by Duffin, his principal, ratifying the sale of such dower interest, and its transformation, by the Otsego court, into a fund in that court, transferred from such real estate to said fund ; and I think CAMPBELL, J., in saying the defendant, upon the verdict, should have a judgment, for the reason that the plaintiff failed to show title in himself, expressed the verdict of the court. His, Duffin's, title vanished when such transformation was occurring. Furthermore before her, Mrs. Coats', right to dower was assigned, whether it might be vested in her or the receiver, it was a mere chose in action (*Thompson* agt. *Fonda*, 4 *Paige Ch.*, 448 ; *Stewart* agt. *Mc Martin*, 5 *Barb.*, 438 ; *Green* agt, *Putnam*, 1 *Barb.*, 500). A chose in action is not real estate, but personal property (2 *Blackstone's Commentaries*, 389–397 ; 1 *Chitty's Pr.*, 99 ; 1 *Barb.*, 500) ; even then, under the rule that a conveyance is only necessary to transfer the title to real estate, such right to dower became vested in the receiver without a conveyance or assignment. After it was thus vested in the receiver, it would be absurd to say that after assignment,

Hayes agt. Buckley.

when it had merged into an interest in real estate, it was necessary for a conveyance or assignment to save a right, already vested in the receiver, from sliding back into the hands of the original party. , If orders are susceptible of such relaxity, without fault on the part of the receiver or his principal, there ought to be some new fastener or supporter put on to them to save such result. I cannot subscribe to the doctrine that there is a possibility of such sliding back. Neither do I believe that the case of *Moak* agt. *Coats* is an authority for the necessity of a conveyance to vest the title to real estate in a receiver appointed in supplementary proceedings; besides, the language used by CAMPBELL, J., in putting forth the necessity of such conveyance or assignment, seems to be based upon the remarks of judge COMSTOCK, in the case of *Chautauque County Bank* agt. *Risley* (19 *N. Y.*, 369). I fail to see how that opinion of judge COMSTOCK had any application as a precedent in the case of *Moak* agt. *Coats*. Judge COMSTOCK's remarks as to a conveyance or an assignment being necessary to vest the title of real estate in the receiver appointed by the court of chancery, or by the supreme court succeeding to its powers, has never been questioned, to my knowledge. The supreme court exercised such power under section 244 of the Code, which is silent as to how the title is acquired by the receiver appointed under it.

Now we come down to a consideration of section 298 of the Code of Procedure, under which the receiver in this case was appointed, and see what we can discover there. That section commences with the declaration that " the judge may also, by order, appoint a receiver of the property of the judgment debtor, in the same manner; and with the like authority, as if the appointment was made by the court, according to section 244 of the Code," that is, by a written order, and the receiver shall have like authority over the property which he becomes possessed of as such receiver, as a receiver appointed by the court under section 244 of the Code would have. That portion cited of section 298 of the Code, does not assume to

say that the receiver appointed under that section shall become possessed of the property of the judgment debtor, in the same manner that he would if he had been appointed by the court, under section 244 of the Code. So much for such omission. No succeeding portion of that subdivision of said section has any reference to the manner in which the title to the real property of the judgment debtor is acquired by the receiver.

Now we come down to the next subdivision of that section (298). That provides, among other things, that, whenever the judge shall grant an order for the appointment of the receiver, &c., the same shall be filed in the office of the clerk of the county where the judgment roll is filed, or a transcript from justice's judgment, upon which the proceedings are taken, is filed; and the clerk shall record the order, in a book to be kept for that purpose, in his office, &c. Then the section says: "A certified copy of said order shall be delivered to the receiver named therein, and he shall be vested with the property and effects of the judgment debtor, from the time of the filing and recording of the order aforesaid." No rule of court, decision or statute, that I am aware of, ever required the delivery of a certified copy of the order to a receiver appointed by the court. Neither do I know of any statute which declared or declares that upon his (the receiver) receiving a certified copy of the order appointing him (by the court), he shall be vested with the property and effects of the judgment debtor as of the time of the filing and recording of said order, or that upon the order being filed and recorded, he shall become vested with the property and effects of the debtor. I fail to see how, prior to the passage of the remaining subdivision of section 298 aforesaid, the term "property," as used in the clause of the second subdivision of said section, 298, just quoted by me, could mean any thing but both the *real* and *personal* property of the debtor. The third subdivision thereof was added in 1863.

Section 464 of the Code has been in existence in its present form since the adoption of the Code in 1848, and it says: " The word '*property*,' as used in this act, includes property *real* and *personal.*" The words, " this act," found in said section, undoubtedly means chapter 379 of the Laws of New York, passed April 12, 1848, which chapter was our present Code of Procedure as first adopted. With that legislative meaning given the word " property," as used in section 298, I am unable to see how, prior to 1863, any court or judicial officer could draw any distinction between the manner of acquiring title to real estate and that of personal estate by receivers appointed in proceedings supplemental to execution. I do not think section 298 of the Code contemplated any distinction in that respect. The statute, as it thus stood prior to the adoption of said amendment in 1863, was, it is true, open to the criticism visited upon it by CAMPBELL, J., in his opinion in *Moak* agt. *Coats* (*ante*). But, conceding that, laws enacted by the legislature, though dangerous in their provisions if within the pale of the Constitution, are not to be repealed, nullified or modified by the courts or judicial officers ; that privilege and duty rests with the legislative branches of the state, and not with the judicial branch thereof. By the adoption of said amendment of 1863, the legislature, in the exercise of its powers, removed the dangerous part of said section referred to by CAMPBELL, J., as aforesaid, by its declaring that before the receiver shall be vested with any real property of such judgment debtor, a certified copy of said order shall also be filed and recorded in the clerk's office of the county where the real estate of the judgment debtor is situated, if situated outside of the county where the judgment roll and the original order appointing such receiver was filed and recorded, and also in the office of the clerk of the county where the judgment debtor resides, if residing out of the county where said original order was filed and recorded. The last clause of said subdivision has been construed by the supreme court at special term in this district by MERWIN, J., as requiring the

filing and recording of a certified copy of order only where debtor or land was situated outside of county where the original order appointing receiver was filed and recorded, and which construction of the same, I cheerfully accept as the true construction thereof. If the law contemplated a conveyance or assignment necessary to vest the property in the receiver, why did not the section provide for a record of such conveyance or assignment in such places, instead of a record of such order and the certified copies thereof? I think I have already fully answered the question. I have conversed with both judges MERWIN and HARDIN on the subject of the necessity of such conveyance or assignment to a receiver of the real estate of the judgment debtor to vest the same in the receiver. They both expressed themselves to me as clear that no conveyance or assignment is necessary for that purpose, and that the appointment, filing and recording of the order, giving the requisite bond, having the same duly approved and obtaining a certified copy of the order, vested the receiver with the title of the real estate of the judgment debtor found in the county where the judgment roll was filed, provided the judgment debtor then resided there ; if he did not reside there or the land was in another county, or both, then, by also filing a certified copy of such order in the clerk's office of the county where the real estate was situated and in the county where judgment debtor then resided. I find on examination (33 *How. Pr. R.*, 618) that the case of *Moak* agt. *Coats* (*ante*) was appealed to court of appeals and judgment rendered by general term, as shown by 33 Barbour, 498, affirmed by the court of appeals. Upon inquiry of the reporter of the court of appeals, I find that no written opinion was given by the court of appeals in the case. In the absence of such written opinion I must assume the court of appeals affirmed the judgment on the ground suggested by me, or at least on some ground other than that a conveyance or assignment was necessary. As this question does not seem to have been

Hayes agt. Buckley.

fully settled by any reported case, I must deny the motion, without costs.

Motion denied without costs.

Since writing the foregoing opinion, the case of *Cooney* agt. *Cooney* (65 *Barb.*, 524) has fallen under my observation. The opinion is given by HARDIN, J., and in that opinion he says, though *obiter*, that an assignment or conveyance is not necessary to vest the title to real estate in the receiver appointed in supplementary proceedings.