## CHARLESTON.

DODSON *et al.* v. HAYS *et al.*

Submitted January 28, 1887—Decided April 9, 1887.

1. SPECIFIC PERFORMANCE—IMPROVEMENTS—CREDITS—ABATEMENTS.
On the 26th day of August, 1865, the following agreement was entered into:—

"This agreement, made the 26th day of August, 1865, between Rice G. Hopwood, guardian of Julia F. Hays, and attorney in fact of Elizabeth Hays and Sarah E. Hays (now Dawson), widow and heirs-at-law of Ebenezer Hays, dec'd, all of Fayette county and State of Pennsylvania, of the first part, and David W. Waldeck, Lewis Schaefer and Joseph Dodson, of Lewis county, and State of West Virginia, of the second part, witsesseth:

That the said parties of the first part, for the consideration hereinafter mentioned, have granted, bargained and sold, and by these presents do grant, bargain and sell, unto the said parties of the second part, all their right and title in and to the equal undivided half part of the following described real estate, to wit, to a tract of land situated and lying in the said county of Lewis, and State of West Virginia, containing three hundred and eighty acres, be the same more or less, and adjoining lands of Richard P. Camden, David W. Waldeck and others, now in possession of Jonas Simmons and Joseph Dodson, tenants of the said parties of the first part.

In consideration of which, the said parties of the second part do agree to pay to the parties of the first part, their heirs or administrators, the sum of nineteen hundred dollars as follows, to wit, six hundred dollars down in hand upon the execution of this agreement, six hundred and fifty dollars more by the first day of April, 1866, and the balance six hundred and fifty, upon the arrival of Julia F. Hays at the age of twenty-one years, the unpaid purchase-money to be on interest until paid; when the whole purchase-money is paid a good and sufficient deed to be made and delivered by the parties of the first part. The land hereby sold is the same which was conveyed by the Commonwealth of Virginia to the said Ebenezer Hays by patent dated the thirtieth day of November, 1838. The parties of the second part are hereby authorized to take possession of the land as soon as they desire.

" In testimony whereof, we have hereunto set our hands and seals the day and year first above written.

|  |  |
|---|---|
| " RICE G. HOPWOOD. | [SEAL.] |
| " JOSEPH DODSON. | [SEAL.] |
| " DAVID W. WALDECK. | [SEAL.] |
| " LEWIS SCHÆFER. | [SEAL.] " |

73

Elizabeth Hays was the widow, and Julia F. Hays and Sarah E. Dawson were the children and heirs, of Ebenezer Hays. Sarah E. Dawson was a married woman, and Julia F. Hays was an infant of tender years—who died intestate, while she was an infant, and her interest in said tract of land descended to her mother and sister as her heirs. These vendees of this tract of land built a house on it and otherwise improved it permanently by fencing and clearing having taken possession of it for the purpose immediately after the execution of the agreement. About five years afterwards, when these improvements had been made, and when the legal title to the land was in Elizabeth Hays and Sarah E. Dawson, Sarah and her husband John S. Dawson conveyed to Jonathan M. Bennett one undivided moiety of this tract of land. And it was partitioned equally between them according to quantity and quality in its then improved condition by a decree of a chancery court. And the portion in severalty assigned to the widow and heir of Ebenezer Hays were conveyed to Rice E. Hopwood, so that he was then in a situation to carry out his contract of August 26, 1885, a considerable portion of the purchase-money to be paid under that contract still remaining unpaid: HELD—Rice G. Hopwood under those circumstances was entitled to have this contract specifically enforced; but in so doing the court should allow as credits on the purchase-money one-half of the enhanced value of the entire tract resulting from the permanent improvements of the vendees made prior to the conveyance to Jonathan M. Bennett of one undivided moiety of the land and also all legal costs paid by the vendees in an ejectment suit brought against them as tenants on this land by an adverse claimant but not the fees of their attorney, whom they employed for themselves and not for the persons, under whom they were tenants.—Nor should there be allowed as credits or abatements of the balance of the purchase-money any costs paid by them in an action of unlawful entry and detainer brought by them against one, who intruded on the land after they had taken possession of it under the agreement.

2. JOINT TENANTS—CONSTRUCTION OF STATUTE.

When the nature of the property is such, as to admit of its use and occupation by several, and less than his just share and proportion of the common property is used and occupied by one tenant in common in a manner, which in no way hinders or excludes the other tenants in common from in like manner using and occupying their just share and proportion, such tenant does not receive more than comes to his just share and proportion within the meaning of § 14 of chap. 100 of the Code, and is not accountable to his co-tenants for the profits of that portion of the property owned by him.

Statement of the case by GREEN, JUDGE :

Allison Clark obtained in 1795 a patent from the Commonwealth of Virginia for a tract of land of 430 acres in, what is now Lewis county in this State. It was sold and conveyed three different times and finally to Jonathan M. Bennett of said county at some time prior to 1865, who had a good title thereto. Those, under whom he claimed, not having taken possession of the land, Ebenezer Hays of Pennsylvania took up, what was supposed to be 380 acres of this tract, as though it was vacant, and obtained a patent for it on May 2, 1838, from the Commonwealth of Virginia. He or his heirs after his death by tenants took possession of a portion of the land many years afterwards, probably not very long after 1855, but at what particular time does not appear. He died intestate leaving a widow, Elizabeth, and two daughters, one of whom died after 1865 in infancy leaving her mother and her sister Sarah E., who had intermarried with John S Dawson, her sole heirs. Rice G. Hopwood of Pennsylvania claimed to have been her guardian. Among the tenants, whom Ebenezer Hays and his heirs had on this tract of 380 acres from a period probably not long after 1855, was one Joseph Dodson. On the 26th of August, 1865, Rice G. Hopwood professing to act as guardian of the infant daughter of Ebenezer Hays and as attorney in fact of his widow and married daughter sold to said Joseph Dodson, David W. Waldeck and Lewis Shaefer of Lewis county in this State an undivided moiety of the tract of land supposed to contain 380 acres aforesaid, for the consideration of $650.00 cash, $650.00 to be paid on the 1st of April, 1866, and $650.00, to be paid when the infant daughter of Ebenezer Hays should arrive of age, which she never did ; and Hopwood executed a deed to these parties for this undivided moiety and expressly authorized them to take possession thereof. He signed the deed, or rather the agreement, himself in his own name. So that this deed or agreement was obviously void as a deed, as he could not, if he had been guardian of the infant child, convey her land ; and Sarah E. Dawson, a married woman, could not by a power of attorney authorize him to sell her interest, as the law then was ; and, if the widow had authorized him to sell and convey her interest, he did not convey it by this deed,

as he signed his own and not her name thereto. Nevertheless the purchasers paid him $775,00, of which $200.00 was paid by Waldeck, $200.00 by Dodson and $375.00 by Schaefer; and shortly afterwards, on October 18, 1865, Schaefer paid him $275.00 more. This is all, that ever was paid by the purchasers to Hopwood. The infant heir having died, the widow and Sarah E. Dawson having inherited the interest of the infant conveyed it to Hopwood, who thus had whatever title Ebenezer Hays had to this tract of 380 acres by virtue of his patent issued in 1838, and he thus had the power to carry out his said agreement of August 26, 1865.

In the mean time the vendees had taken possession of this land, and Dodson had built on it a house, and he and his children before and after his death had cleared and fenced thirty or forty acres of land and planted an orchard. These improvements were worth probably between $400.00 and $600.00. Schaefer also cleared and fenced on this tract of land some ten or fifteen acres at a cost probably of $100.00 or $150.00; and Waldeck had cleared and fenced some thirty acres at a cost of $300.00 or $400.00. Shortly after these vendees took possession, one Anderson Longwood as tenant of Jonathan M. Bennett entered upon a portion of the land, the whole of it being claimed by him under Clark's patent, and therefore these vendees brought a suit of unlawful entry and detainer before a justice against said Longwood to recover the possession of the land; and they did recover it; but Longwood took an appeal to the Circuit Court of Lewis county, and the judgment of the justice was reversed at the costs of the vendees of Hopwood. Longwood's costs amounting to $177.55 and their own to $129.97. This judgment was rendered probably in May, 1868. In the mean time Jonathan M. Bennett claiming all of this land instituted an action of ejectment in the District Court of the United States for the district of West Virginia against said vendees of Hopwood as the tenants of the widow and heirs of Ebenezer Hays; but, though he had the superior legal title, yet the said tenants had been in adversary possession of portions of said 380 acres for so long a time, that he thought it best to compromise the suit with them, and he accordingly agreed to dismiss the suit, each party paying his own costs and to divide the 320 acres

equally between them. Accordingly on the 19th of February, 1870, an agreement and deed was executed, whereby Jonathan M. Bennett and wife conveyed to Elizabeth Hays and Sarah E. Dawson one moiety of the said 380 acres with general warranty, and Elizabeth Hays and Sarah E. Dawson and her husband, John S. Dawson, conveyed to Jonathan M. Bennett with special warranty of title one moiety of this tract. This deed was duly acknowledged and recorded; and said suit was accordingly dismissed. The defendants' costs other than their attorney's fees in this suit were some $36.00.

Within three or four months, after this compromise was made, three arbitrators divided this land, as they say in their report dated January 15, 1870, into equal portions by a single line drawn across it, adding that it contains but 332 acres instead of 380 acres as supposed. In their report they use the following language:—" It is understood and agreed between J. M. Bennett, W. J. Bland, David Waldeck, Joseph Dodson's heirs, by their legal agent, and Lewis Schaefer, parties, who are interested and owners of the aforesaid 332 acres of land, that said J. M. Bennett and W. J. Bland are to have that portion or half of the aforesaid 332 acres of land bounded as follows:" (giving by metes and bounds its boundaries) " containing by estimation 166 acres; and that said David Waldeck, Joseph Dodson's heirs and Lewis Schaefer are to take the residue of the aforesaid 332 acres as parted off by the aforesaid division line. " By this arbitration, as the division line was run, there was assigned to Jonathan M. Bennett and Bland, his tenant or assignee, all the land, which Dodson and his heirs had cleared and fenced, some thirty or forty acres, including the house he had built, and also the ten or fifteen acres, which Schaefer had cleared; but the land, which Waldeck had cleared and fenced, say some thirty acres, was assigned to the vendees, Waldeck, Dodson's heirs and Schaefer.

Jonathan M. Bennett was willing and desirous to carry out his deed and agreement of February 19, 1870, by conveying to Elizabeth Hays and Sarah E. Dawson the 166 acres assigned by the arbitrators to their vendees or assignees, Waldeck, Dodson's heirs and Schaefer; but they refused to accept such conveyance and also refused to convey

to him the 166 acres assigned to him and his tenant by the arbitrators. At the September rules, 1870, the said Bennett brought a bill in chancery against Elizabeth Hays and Sarah E. Dawson and her husband, John S. Dawson, the heirs of Joseph Dodson, deceased, and Waldeck and Schaefer to compel a compliance with the agreement of compromise made between him and Elizabeth Hays and Sarah E. Dawson and her husband, John S. Dawson, on the 19th of February, 1870, by having the said land partitioned between the plaintiff and the defendants by adopting the division made by the said arbitrators or by making a new division and requiring the making of the necessary deeds. There were filed with this bill the deed and agreement of February 19, 1870, and the report of the arbitrators of June 13, 1870. In the bill it was stated, that these arbitrators had been selected one by Bennett and the other two by Waldeck, Schaefer and the adult heirs of Dodson, who were remotely vendees of the widow and heir of Ebenezer Hays.

The court by a decree dated November 21, 1870, appointed three commissioners to make equal partition of said land between Bennett and Elizabeth Hays and Sarah E. Dawson and her husband, J. S. Dawson, according to quantity and quality, each of the parties plaintiff and defendants to hold their moiety in severalty. On May 16, 1871, the Court referred the cause to a commissioner to ascertain and report, what interest, if any, the defendants, Schaefer, Waldeck and the heirs of Joseph Dodson, had in the land. On November 6, 1872, the court entered a decree appointing commissioners to divide the land in all respects similar to the decree of November 21, 1870, except that the court reserved all questions touching the rights of the defendants, Waldeck, Schaefer and Dodson's heirs, under any supposed purchase by them of any portion of the land in controversy for future decree. And on November 6, 1872, a final decree was rendered in this cause confirming a report by the commissioners of the partition of this land, setting out the share of the plaintiff by metes and bounds and the share of the defendants, the widow and heir of Ebenezer Hays, also by metes and bounds, the share of each being 150½ acres, which made the whole tract 301 acres instead of 332 acres as stated

in the report of the arbitrators. And it was ordered, that Bennett and Hays's widow and heir interchange deeds conveying the parts severally assigned them and dividing the costs of the suit between them ; and the decree concludes : " This decree is without prejudice to the rights of the other defendants to this suit, who are at liberty to sue on any contract growing out of or relating to said land without this decree being held or construed as a hindrance or impediment to the prosecution of the same. " In this cause none of the defendants except the infants appeared ; but the bill was taken for confessed as to all the adult defendants but two of Dodson's heirs, whose answers are not copied into the record, and six others of his heirs, who were infants, answered by their guardian *ad litem.* These answers were all replied to generally, and no depositions were taken. The partition made by the commissioners corresponded substantially with that made by the arbitrators.

Upon this state of facts the present suit was instituted by the heirs of Joseph Dodson, three of them being still infants suing by their next friend, and James O. Vandervort, sheriff of said county and as such administrator of said Dodson. They filed their bill at August rules, 1880, in the County Court of Lewis county, and on March 14, 1881, the suit was removed to the Circuit Court of the same county. In their bill they set out the contract made by the said Hopwood for the sale of one undivided moiety of the land supposed then to be 380 acres to their ancestor Joseph Dodson, David Waldeck and Lewis Schaefer for $1,900.00 upon the terms hereinbefore stated; and they filed this contract with the bill. They also say in the said bill, that Waldeck in addition to the $200.00 cash paid by him to Hopwood on this land also paid the costs hereinbefore stated in the two suits, one in the Federal Court and the other in the State Court before specified and also bound himself to pay $50.00 fee to the attorney employed by him to defend the ejectment suit instituted by Bennett. They further state the payment made by Schaefer to Hopwood in the purchase of this undivided moiety. They also set out the compromise between Bennett and Ebenezer Hays's heirs and widow made without their consent or that of their co-purchasers Waldeck and Schaefer. The bill also

states the improvements which their ancestor had put upon the land, and those, which Schaefer had made, and alleges, that the improvements had been made on that portion of the land pointed out and designated by Hopwood and Dawson and wife as the portion, which in the division would be assigned to them. The bill also alleges, that in carrying out the compromise the defendants disregarded the rights of Dodson's heirs and of Schaefer and conveyed to Bennett all the improvements, which their ancestor and his co-purchasers had put upon this land by clearing and fencing and building upon it as instructed to do by said defendants. The bill asks a restoration of the money paid by Joseph Dodson to Hopwood and the value of the improvements, which said Dodson and they had put upon the land, and that, if necessary the land now owned by them be sold to pay these sums and also to pay said Dodson's co-purchasers for the money, which they had paid to Hopwood, and for the money expended by them in improvements, and for general relief. These co-purchasers, and the widow and sole heir of Ebenezer Hays with the husband of said sole heir and Rice G. Hopwood are made defendants.

Hopwood died, and, when the cause was removed into the Circuit Court, it was by consent revived against David I. Hopwood, Margaret Hopwood, A. F. Hopwood, Jennie Cooper, French P. Hopwood, and Robert G. Hopwood, his heirs. They filed their answer, which was replied to generally. Said answer states the facts substantially as stated above, except that it denies, that Dodson, Waldeck and Schaefer or either of them ever paid any costs in the ejectment suit in the Federal Court; and as to the controversy with Longwood in the unlawful detainer case the answer claims, that these purchasers from Hopwood bought only an undivided half of this tract of land, and that therefore the controversy with Longwood did not involve any title to the land so sold to Dodson Waldeck and Schaefer, as they bought only an undivided half and not any particular part. The answer refers to the chancery-suit brought by J. M. Bennett herein before mentioned, and says, that, if any improvements were made on the land, they were made without any promise or assurance, that they could hold any par-

ticular part of the land. The answer further alleges, that Dodson, Schaefer and Waldeck knew, when they purchased said undivided half, that a compromise with Bennett had been substantially agreed to whereby he was to get an un-divided moiety of the land. The answer denies the plaintiffs' right to have their contract of purchase rescinded and claims, that the legal title to the land, which had been in Ebenezer Hays and descended to his widow and heirs, had been passed to Rice G. Hopwood, their ancestor, by a re-corded deed, a copy of which is filed with the answer, though not in the printed record, and that they are thus able and willing to execute the contract made with Hopwood, when the purchase-money still due on the contract shall be paid. The answer asks as affirmative relief, that this contract be specifically enforced, and that the land be sold to satisfy the balance of the purchase-money due to Hopwood's estate.

The plaintiffs filed a bill of revivor and supplement, in which they say, that R. G. Hopwood had no sort of author-ity to sell this land, when he made the contract of sale, al-leging as reasons, what has already been stated, and deny-ing his authority to sell as guardian of the infant heir of Eb-enezer Hays, or that the adult heir could execute a power of attorney, as she was a married woman, or that he had any power of attorney from the widow to sell. They claim, that the contract was a personal contract with Rice G. Hopwood, who signed and sealed it individually, and that it can be en-forced against him and his heirs, as he afterwards acquired the title to the land. They allege, that said Hopwood notified them, that, if they entered upon the land in disregard of the division thereof between him and Bennett, he would sue them ; and that they then abandoned the land, which they had held. They insist, that he is bound to convey the land to them, to which he acquired title, after he sold it to their ancestor, as far as he was able to do so. The bill concludes as follows : " The plaintiffs are willing to have the contract specifically executed between said Hopwood and the plain-tiffs by payment for improvements made under his purchase or the boundary assigned Joseph Dodson and omitting inter-est on their contract, until possession be restored ; and they pray for general relief."

74

The answer of Hopwood's heirs to this supplemental bill admits, that the compromise made by Bennett was not with the plaintiff and his co-purchasers but with Ebenezer Hays's heirs. It denies, that any personal obligation was assumed by R. G. Hopwood; insists, that the plaintiffs and their co-purchasers are bound by the decree partitioning the land made in the chancery suit brought by Bennett; denies, that Rice G. Hopwood interfered in any way with any of the parties after this decree; denies, that, if the contract should be specifically executed, the plaintiffs would have any right to be paid for their improvements; and asserts, that Waldeck has sold and conveyed his interest in said land to Bennett.

Elizabeth Hays in her answer admits, that Rice G. Hopwood did obtain the legal title, which her husband had in this land.

Schaefer in his answer claims, that he has paid more than one third of the purchase-money, when the proper abatements have been made because of the deficiency in the amount of land; and he asks to have it refunded to him or enforced against the shares of his co-purchasers, who are in default.

Waldeck in his answer says, that the suit of unlawful entry and detainer was brought by him and Schaefer against Longwood by the direction of Hopwood; and, after the judgment had been appealed from, they dismissed the suit because they could not maintain it, as the court intimated, it being proposed to abate a part of the costs, some $42.82; that they spent in the prosecution of said suit $166.05; and this, he claims, should be refunded as also the fee of $50.00, which he and Schaefer agreed to pay to an attorney in the ejectment-suit, before it was compromised. He also says, that afterwards Hopwood notified him not to use the land after the compromise, and that he did not. He further says: —"He insists upon a faithful execution of the contract without reference to where his lot may fall. He is jointly bound in all things, and he desires above all things, that the contract with said Hopwood should be enforced." He claims his share, one third. He insists, that this should be done, because, though Hopwood had no title to the land, when he

sold it, he acquired title to it, before he died.  He asks to be relieved from interest from the time he was deprived of the land; and that he be allowed for the costs paid by him in defence and prosecution of the title.

These answers were replied to generally.

By a decree entered July 11, 1881, the court refused to permit any inquiries to be made by a commissioner, as to whether the plaintiffs or any of the vendees had title assured to them by Hopwood to any particular part of the land, where they improved it, or as to the value of the improvements, or as to the amount, which should be abated because of land lost by superior title, or the value of the improvements put on the land by each vendee separately, the court regarding none of these matters, as in any way involved in the suit; but the court did order a reference as to the quantity of land lost by superior title and the value of it as compared with the value of the whole land sold, and the amount due from the purchasers.

The commissioner reported, that there was no land lost by superior title, but that there was a deficiency in the number of acres being only 301 acres instead of 380 acres, the number for which it was sold; that the price should have been $1,505.00 instead of $1,900.00 ;—that there was still due of this purchase money $922.68 with interest from June 19, 1882, on $461.34, all of which and more than all was due from Waldeck and the estate of Joseph Dodson, each of them owing $605.98⅔ as of June 19, 1882, with interest on $301.66⅔, while Schaefer had overpaid as of June 19, 1882, $294.46, of which $147.23 bore interest from that date.  The credits allowed as payments were those only, which, I have heretofore stated, were allowed.  He also reported, that one of Rice G. Hopwood's executors had paid in taxes on this land and to redeem it from forfeiture in 1881 the further sum of $40.30, which added to $922.68 would make the total amount due on this land $962.98.

The plaintiffs' counsel objected to this report, because interest was computed against the vendees on the purchase-money due, while R. G. Hopwood exercised ownership on the land to the exclusion of the vendees, and also because no credit was allowed for expenditures by the vendees in vindicating the title in the two suits before referred to.

Depositions were taken before the commissioner and re-turned with his report. They prove the facts with reference to the improvements and the costs paid by the vendees in the litigations, as I have before stated them.

By a decree rendered on the 24th of March, 1883, the court decided, that the heirs of R. G. Hopwood have a right to a specific execution of the contract of sale made by him to J. Dodson, D. W. Waldeck and L. Schaefer of the undivided moiety of the land subsequently partitioned, and to enforce against the same the balance of the purchase-money as ascertained and reported by the commissioner after abating for loss and deficiency of land; and that one of the defendants, R. G. Hopwood, is entitled on account of taxes paid by him to have refunded to him $54.42 with interest on $40.30 from June 19, 1882, and on $14.12 from March 2, 1883; and that they should be paid out of the proceeds of any sale, that may be made of the land. The court also decreed, that the heirs of R. G. Hopwood do convey to the heirs of Joseph Dodson and to David W. Waldeck and Lewis Schaefer the 150½ acres of land partitioned in said cause of *J. M. Bennett* v. *Ebenezer Hays's heirs et al.* by deed with special war-ranty, one undivided third part thereof to be held by the heirs of said Dodson and one undivided third thereof each to be held by David W. Waldeck and Lewis Schaefer, which deed should be filed in the cause in sixty days, and if not so filed, such deed for said heirs should be made by John Brannon appointed a commissioner for that purpose, for which they should pay him $3.00. And the court adjudged, that the taxes aforesaid, $54.42, due R. G. Hopwood with interests as aforesaid and the net balance of the purchase-money un-paid, $943.96, with interest thereon from March 26, 1883, was a just charge on said land, and if these heirs were not paid in fifty days, John Brannon was appointed a commissioner to sell two undivided third parts of said land on credits of six, twelve and eighteen months bearing interest from day of sale; and the usual and proper directions were inserted in this decree about the time, place and manner of sale.

The sale was made pursuant to said decree, and Jona-than M. Bennett became the purchaser for the sum of $1,-220.00 with interest from the day of sale, June 19, 1883.

There being no exceptions to this sale, it was confirmed, and proper provision made for the collection of the purchase-money; and the cause was continued to inquire, what disposition should be made of the surplus of this purchase-money after paying costs of sale and the liens ascertained by the previous decree, which were directed to be paid ; and by the decree of March 20, 1883, the court did not decide as between the purchasers, Schaefer Waldeck and Dodson's heirs, what each paid severally, and their redress against or amongst each other in case one of them had paid more than another, but left it unacted upon by consent of the parties interested.

From these decrees the heirs of Joseph Dodson have obtained an appeal.

*J. M. Bennett* for appellants.

*John Brannon* for appellees.

Green, Judge :

This suit was instituted by the heirs of Joseph Dodson in August, 1880, to set aside and rescind a deed or agreement made by Rice G. Hopwood, of Pennsylvania, with their ancestor Joseph Dodson, David W. Waldeck and Lewis Schaefer, whereby was sold or agreed to be sold a certain tract of land in Lewis county, West Virginia. This deed or agreement was as follows :

"This agreement, made the 26th day of August, 1865, between Rice G. Hopwood, guardian of Julia F. Hays, and attorney in fact of Elizabeth Hays and Sarah E. Hays (now Dawson), widow and heirs-at-law of Ebenezer Hays, dec'd, all of Fayette county and State of Pennsylvania, of the first part, and David W. Waldeck, Lewis Shaffer and Joseph Dodson, of Lewis county, and State of West Virginia, of the second part, witnesseth :

That the said parties of the first part, for the consideration hereinafter mentioned, have granted, bargained and sold, and by these presents do grant, bargain and sell, unto the said parties of the second part, all their right and title in and to the equal undivided half part of the following described real estate, to-wit, to a tract of land situated and lying in the said county of Lewis and State of West Virginia, containing

three hundred and eighty acres, be the same more or less, and adjoining lands of Richard P. Camden, David W. Waldeck and others, now in possession of Jonas Simmons and Joseph Dodson, tenants of the said party of the first part."

Then follows the consideration ($1,900.00) which the vendees agreed to pay, with a stipulation, that, "when the whole purchase-money is paid, a good and sufficient deed is to be made and delivered by the parties of the first part;" and the agreement concludes : "The parties of the second part are hereby authorized to take possession of the land as soon as they desire." It is signed by Rice G. Hopwood individually and by each of the vendees.

Rice G. Hopwood appears on the very face of this agreement to have had no title to the land at that time ; nor did he have any authority to sell. Of course he could not sell the interest of his ward, Julia F. Hays, or any part of it. He could not sell the interest or any part of the interest of Sarah E. Dawson ; for she was a married woman, and as the law then was, she could not even by joining with her husband and duly acknowledging a power of attorney authorize him to sell her interest or any part of it in this land. And while it is true, that Elizabeth Hays as a widow had a life-estate in one third of the land and the power to authorize him by power of attorney to sell her interest, there is not a particle of evidence to show, that she ever did execute to him such a power of attorney, and that she ever did, is denied in the pleadings. We may then safely assume, that on the 26th of August, 1835, when this agreement was executed, no right or title either legal or equitable passed to the vendees by this agreement. They however thought otherwise and paid to Hopwood, who had no title then, $775.00 in cash and took possession of the land, as by the agreement they were expressly authorized·to do, and proceeded to clear and fence the land, and in five years they had cleared and fenced between fifty and seventy five acres of the land, perhaps more, and built a house thereon. In the mean time Julia F. Hays, the infant, had died, and her interest in the land had descended to her mother and married sister, Sarah E. Dawson ; and they being then the owners of the whole title of Ebenezer Hays to this land con-

veyed one undivided half of said land to Johathan M. Bennett on the 19th of February, 1870, the husband of Sarah E. Dawson uniting in the deed. Shortly thereafter by a suit in equity this tract of land was equally divided between Jonathan M. Bennett and his vendors, Elizabeth Hays and Sarah E. Dawson. In making this division some thirty acres, which had been improved by the vendees of Hopwood, were assigned to Bennett and a deed made to him. Shortly after this, but when, it does not appear, Elizabeth Hays and Sarah E. Dawson, her husband uniting in the deed, conveyed to Hopwood the moiety of this tract of land, which the court in the partition aforesaid had assigned to them. So that then Bennett owned in severalty one moiety of this tract of land; and Hopwood owned in severalty the other moiety and was then for the first time in a condition to perform his contract aforesaid, the only difficulty being, that he had agreed to convey an undivided moiety and could only convey a moiety of it in severalty, which moiety his vendees might object to receive, as they had had no voice in the division, which they would have had, if an undivided moiety had been conveyed to them according to the agreement. Dodson, one of the vendees of Hopwood, did object to taking this moiety of the land in severalty, which Hopwood was willing and desirous on receiving the balance of the purchase-money to convey to his vendees. But they abandoned the land all of them, not being willing to take it in lieu of the undivided moiety of the whole tract, which under their contract, they claimed, they had a right to demand; and the heirs of the said Dodson brought this suit in chancery to have this contract rescinded as incapable of being executed by Hopwood and to have the money, which they had paid to him, restored to them and to have him do certain other things, which will presently be spoken of.

This suit was brought in the County Court of Lewis county by the heirs and administrator of Joseph Dodson against Rice G. Hopwood and the co-vendees of said Dawson, Waldeck and Schaefer, and the vendors of Hopwood were also made defendants. The cause was moved into the Circuit Court of Lewis county; and Hopwood died. His heirs filed an answer in the nature of a cross-bill, in which they ask,

that the said contract made by the plaintiff's ancestor and others be specifically enforced. The said court decided that the heirs of Hopwood had a right to the specific performance of the contract. Did the court err in this conclusion?

It is argued, that the court ought not to have specifically enforced this contract. The first argument against enforcing this contract specifically is, that, when it was entered into, there was a want of mutuality in the contract, and the rule is, that a contract to be specifically enforced must be mutual, and its mutuality is to be judged of, at the time it is entered into. In this case, when the contract was entered into, the vendor had no title to or authority to sell the land or any interest in it; and therefore the contract was not mutual for want of interest in the vendor. While this is doubtless correct law as a general proposition, it has no application in this case; for the contract on its face, as we have seen, showed, that the vendor at that time had no interest in the land, which he undertook to sell, and the vendees must be conclusively presumed to have known this, and to have agreed to purchase the land upon the faith that the vendor could and would obtain the title thereto, before by the contract he was required to make to the vendees a good and sufficient deed, that is, before all the purchase-money should be paid; this he actually did. The vendees in this case knowing, that the contract could not, at the time it was entered into, be carried out by the vendor, and that it was a nullity as to him, nevertheless went on for years acting as though it was a subsisting contract binding on the vendor. Such conduct must be regarded as estopping them from objecting, that the contract was a nullity. Ordinarily the inquiry is not, whether the vendor could make a good title, at the time the contract was made, but whether he can do so, when required to do so in the suit, or where a report is made in the cause on his title (*Bennett College* v. *Carey*, 3 Brown C. C. 390; *Wynn* v. *Morgan*, 7 Ves. 202). At least this will suffice, if there has been no unreasonable delay, and time is not material (*Langford* v *Pitt*, 2 P. Wms. 629).

In the case before us the good and sufficient deed was not to be made till after an infant obtained her majority, and all the purchase-money was paid. So that the time, when the

vendor was required to make such deed was many years in the future and had not expired when this suit was brought. The vendees having been at once placed in possession, it is obvious, that time was not regarded as material by the parties. When this is the case, courts often allow time for the completion of the title. (*Coffin* v. *Cooper*, 14 Ves. 205; *Duke of Beaufort* v. *Glynn*, 2 Sm. & G. 213.) Even when the vendor has no title, at the time he makes the sale, yet, if the purchaser acquiesces in steps taken by the vendor to get the title, he will be bound to accept the title, if made out at the hearing. (*Hoggart* v. *Scott*, 1 R. & My. 293; *Salisbury* v. *Hatcher*, 2 Y. & C. C. C. 54.) In the present case the report of the arbitrators to divide this land into two equal parts states, that these vendees agreed to take the portion of the tract, which might be laid off for them under this contract nearly five years after it was made. They were parties to the chancery suit brought by Bennett to partition the land and assign a moiety in severalty to the parties, for whom it appears in the contract Hopwood was acting; and who shortly after made Hopwood a perfect title to a specific moiety of this land. After these occurrences and in view of the fact, that the vendees knew the condition of Hopwood's title, when he undertook to sell, they can not object, that it was imperfect, when the contract was made, it being perfect, when the suit was instituted.

In *Vail* v. *Nelson*, 4 Rand. 478, 481, Judge Green said:— " When a purchaser, when he makes his contract, knows, that there is a defect in the title, and that it will take a considerable time to remove it, or acquires this knowledge after his purchase and acquiesces in the delay or proceeds with knowledge of the defect in the title in the execution of the contract, he can not afterwards complain." In the same case he further said:—" The purchaser knew, that no conveyance could be immediately made; and there was no possible means of removing the impediment but by efflux of time; yet with this knowledge he made the purchase and proceeded to carry it into effect, as far as under existing circumstances it could be done. And indeed there was no time stipulated for making the conveyance." In that case the contract was executed.

75

In this case the vendees knew, that a title to one third of the property bought could not be made for many years, till Julia F. Hays, an infant, should reach her majority. Yet with this knowledge they made the purchase and proceeded to carry it into effect by paying more than a third of the purchase-money in cash and taking possession of the land and improving it by clearing, fencing and building a house thereon. They can not now object, if a satisfactory title can now be made to them. As was said in *Drisel* v. *Jordan*, 104 Mass. 407 : "It is not essential, that the vendor had at the time of the contract such title and capacity to convey the property or such means and right to acquire it, as would enable him to fulfil it on his part. It is sufficient, if he is able to convey, when he is required by the contract or the equities of the case. And, when time is not of the essence of the contract, the vendor will be allowed a reasonable time to obtain a perfect title." (*Mays* v. *Swope*, 8 Gratt. 46 ; *Godden* v. *Vaughn's Ex'r*, 14 Gratt. 125 ; *Rader* v. *Neal*, 13 W. Va. 374, pt. 4 of Syll.) Under the circumstances of this case the fact, that, when this contract was made, Hopwood could not make a good title to the land, which he sold, ought not to prevent the court from enforcing it specifically on the application of his heirs.

But a much more plausible reason is urged, why the contract should not have been specifically enforced by the Circuit Court, that is, that the heirs of the vendor never were nor could be put in a condition to convey the land, which he contracted to convey. He contracted to convey an undivided moiety of a particular tract of land. All they ever could convey was a particular half of this tract by certain fixed boundaries. To this they had a good title in severalty ; but neither he nor they ever acquired any title to an undivided moiety of said tract, and it was this, he contracted to convey. If the vendees had this, they would have a voice in the partition, which might be a matter of great importance to them.

But the record shows, that whatever might ordinarily be the importance of giving the vendees a voice in the partition, and however much indisposed a court might be generally to compel a vendee to take in severalty a particular

part of a tract of land, when he had bought an undivided share thereof, the conveyance in this case of the particular half in severalty to the vendees, as the heirs of the vendor offered to do, would have been a substantial compliance with the contract. In this case the vendees did in fact have a voice in the partitioning of the land, though they had no legal right to demand, that they should be consulted; and it was in their judgment as fairly and justly divided with reference to their interests, as it could be done. The report of the arbitrators appointed to divide the land on its face shows, that the vendees were consulted and were satisfied with the division, when it was made. When some of them afterwards became dissatisfied, and Bennett brought a chancery-suit to compel a division, these vendees were made parties defendant. They filed no answer; and it was alleged in the bill, that they, the plaintiffs in this suit, were satisfied with the division and had signified their willingness to accept a deed according to the division. This statement was not denied and must be regarded as confessed to be true. The court actually divided the land substantially, as it had been divided by the arbitrators. The plaintiffs in this suit can not now be heard to complain of this division. The decree of the court in that case shows, that the court did not regard these vendees as persons, who had a right to demand to be made parties. But though they were neither necessary nor legitimate parties to that suit, and though the court in its decree declared, that their rights should not be prejudiced by the decree, yet they were represented in the suit by persons, whose interest it was to protect them in their rights and to see, that their interests were not overlooked. The moiety of the land, which Hopwood had sold to them, was assigned to Elizabeth Hays and John Dawson and Sarah E. Dawson, his wife, who were the parties, for whom Hopwood was acting, when he sold this land. These vendees of Hopwood were tenants of these parties and it was their interest to have this land so divided as not to prejudice the interests of their tenants. We cannot therefore think, that any different portion of this land would have been assigned to Bennett, if a conveyance of an undivided moiety of the land had been made to these vendees, before that partition suit was

brought. If this be so, they were not prejudiced by the partition being made. But it was quite proper for the court to declare, that this partition should in no manner prejudice their rights under the contract, the specific performance of which was sought to be enforced in this action. For these reasons I am of opinion, that the court did not err in refusing to rescind this contract and in holding, that Hopwood's heirs had a right to have it specifically enforced. I can not see how the court could well reach any other conclusion in view of the fact, that both the vendees other than Dodson in their answers ask, that the contract be specifically enforced, and that even the plaintiffs in the supplemental bill say, that "they are willing to have this contract specifically executed." But they all insisted, that in executing it specifically they should be allowed certain credits on the purchase-money, which was not allowed by the contract.

I propose now to consider these credits claimed by them or by some of them, and determine, whether the court erred in refusing to give any such credits. The first inquiry I shall make is : Ought the court to have given the vendees any credit for the improvements put upon the land after their purchase from Hopwood of an undivided moiety? When the vendees made this purchase, they were expressly authorized by the contract of purchase "to take possession of the land, as soon as they desire ;" and they paid down in cash $775.00. As this tract of land was nearly all of it uncultivated and in woods, this provision in the contract shows, that the understanding between them and the vendor was, that they were at liberty to go upon the land and clear and fence it, so as to make it of some value to them. They were authorized in other words to improve the land. They must be regarded as by this contract made tenants in common with Elizabeth Hays and Sarah E. Dawson, the two latter holding the legal title to the whole tract, and the vendees holding the equitable title to it as tenants in common, the widow and heirs of Ebenezer Hays having one undivided moiety, and the vendees having the other, the parties being equitable tenants in common. The law with reference to one tenant making improvements on land held by him as such is thus stated in the notes to *Agar* v. *Fairfax*, 2 White

and Tudor Lead. Cas. (4th Am. Ed. from the London Ed.) 916.

"It has been held repeatedly in accordance with the opinion expressed Story Eq., § 655, that, where a tenant in common has laid out money in erecting buildings or making other substantial improvements, the court may in entering a decree in partition direct, that the portion of the premises, which has thus been enhanced in value, shall be assigned to him or, if this can not be done conveniently, and it becomes requisite to proceed to a sale, that the purchase-money shall be so apportioned, as to re-imburse him for his outlay. *Green* v. *Putnam*, 1 Barb., 500; *Concklin* v. *Concklin*, 3 Sandf. Ch'y 64; *Felix* v. *Randin*, 3 Edw'ds Ch'y 323; *Watson* v. *Duncan*, 44 Miss., 642; *Dean* v. *O'Meara*, 47 Ill. 120; *Courts* v. *Bibner*, Id. 514; *Lonvalle* v. *Meanaugh*, 1 Gilman 39; *Boraugh* v. *Archer*, 7 Dana 176; *Hall* v. *Paddock*, 6 C. E. Green 311; *Obert* v. *Obert*, 1 Halst. Ch'y 337; *Doughady* v. *Crowell*, 3 Stockt. 201; *Kurtz* v. *Hilmes*, 53 Ill. 514; *Martindale* v. *Alexander*, 26 Ind. 104; *Swan* v. *Swan*, 8 Price 518."

In *Hall* v. *Paddock*, 6 C. E. Green 211, it was held to be immaterial, whether the tenant in common making the improvement knew, he was but a tenant in common, or believed, he owned the whole land himself. The only good faith required on the part of a tenant in common in making improvements is, that he should honestly believe, that they would enhance the value of the property to all concerned. If this appears, he is entitled to remuneration for the increase of value resulting from his act.

A different view was taken in *Scott* v. *Guernsey*, 48 N. Y. 106, where it was held, that there is no equitable or legal ground for allowing a tenant in common compensation for improvements, which he made with a full knowledge of the title of his co-tenants and without their consent.

When as in *Concklin* v. *Concklin*, 3 Sand. Ch'y 64, the complainant is under the erroneous impression, that he is the sole owner, or when he has obtained the assent of the owners, or when they stand by and do not object, the case is a different one, and the chancellor may properly take the increased value of the land into view in making the partition.

In this decision the Court relied on *Putnam* v. *Richards*, 6 Paige 390. But White and Tudor in their notes, while not controverting the correctness of the principles laid down in this case in 6 Paige, which was not a case between co-tenants, say :—"It does not necessarily apply to the case of a co-tenant, who is unable to use the property in its existing condition and may be compelled to put up fences or erect buildings in order to render it available to himself and the other owners. His position is therefore different from one, who though innocently holds and improves property, to which he has no right." In such case according to the civil law the rule would seem to be, that he is entitled to remuneration for what he has done after deducting a fair compensation for any benefit, which he has derived from the property while in his possession. But we need not trouble ourselves about these distinctions; for the cases seem all agreed, that in a case like the one before us, where improvements such as clearing, fencing and building are made by one tenant in common with the assent of the others, or where they know, that such improvements are being made, and do not object, which was certainly true in this case, such tenant in common is entitled to the full benefit of the in-creased value of the land, either by having his improvements assigned to him at the rate the land would have been worth before the improvements were made, or, if the land is sold, to have an additional part of the price allowed him, which shall be equal to the increased price obtained as the result of his improvements.

In the case presented by this record, if the widow and heirs of Ebenezer Hays had had good title to this tract of land and had not conveyed one undivided moiety thereof to Jonathan M. Bennett to make good and indisputable their title to the other moiety in a partition of the land between them and the vendees of Hopwood, the said vendees would clearly have been entitled to be reinbursed for the enhanced value of the land resulting from the improvements made upon it. Now the conveying of one moiety of the land to Bennett in order to enable the heirs of Hays to make a perfect title to Hopwood, that he might comply with his contract, should not prejudice in any manner the vendees of Hopwood. But

Bennett and Hopwood each having conveyed one undivided moiety of the land, after its value had been enhanced by all the improvements made upon it by the vendees of Hopwood, it is obvious, that the heirs of Hopwood in the particular one half of the land, which descended from their ancestor, got a parcel of land equal to half the value of the tract when unimproved and half the value of the improvements made thereon by the vendees.   Whereas, we have seen, these vendees as tenants in common with the widow and heirs of Hays were entitled in the partition to a parcel of land equal to half the value of the entire tract and all their improvements added.  So that Hopwood's heirs could convey to the vendees a parcel of land less in value than the parcel they were entitled to by one half of the enhanced value resulting from their improvements.

The Circuit Court ought therefore to have credited these vendees on the balance of the purchase-money due from them with one half of the enhanced value of the land by reason of their improvements, at the time one undivided moiety of it was conveyed to Bennett on February 19, 1870. The improvements made by the vendees since that date have been, it is to be presumed, paid for in effect in the partition made under the decree of November 6, 1872, in the suit of Bennett v. Hays's heirs by the defendants in that suit receiving in value more than one moiety of the tract, and of this the vendees of Hopwood received the benefit, when this portion of the land so divided was sold as theirs.   There is no hardship in this for Hays's heirs then received by this conveyance to Bennett what they regarded as the value of one half of the land enhanced by one half of the improvements.

Is there any other credit, to which these vendees are entitled, which was not allowed to them by the Circuit Court? They claimed to have paid certain clerk's costs and surveyor's costs in the ejectment suit brought against them by Bennett for this land in the District Court of the United States for the District of West Virginia at Clarkburg.   The court should have directed a commissioner to inquire into this and also into what was the enhanced value of the entire tract by reason of the improvements put upon it by these

vendees. But it may be claimed, that these vendees, tenants in common with the vendor, as an offset to the allowance to them of half the enhanced value of the land by reason of the improvements should be charged with the rents and profits made by them out of said land. They are not liable to be so charged in this case. At common-law as tenants in common they had a right to occupy and use any part or all of the land without being accountable in any form or to any extent to their co-tenants, unless they contracted with them for such accountability or ousted or excluded them from possession, or unless they destroyed or wasted the common property, none of which they did. (1 Coke 787, note R.) But the statute of Anne, chap. 16, § 27, was passed to remedy this defect of the common law; and a similar statute was passed in this country at an early period and has ever since continued in force. In the Code of Virginia of 1849, chap. 145, § 14, p. 586, it is to be found in the same words, in which it stands in the Code of this State of 1869, chap. 100, § 14, p. 541. The section is as follows :—

"An action of account may be maintained against the personal representative of any guardian or receiver and also by one joint tenant or *tenant in* common or his personal representative against the other receiving more than comes to his just share or proportion against the personal representative of any such tenant or *tenant in common*."

In England in the case of *Henderson*, v. *Eason* 17 Ad. & El. (N. S.) 701 (79 E. C. L.) decided in 1851 it was in effect decided, that this statute makes a tenant in common liable to account to his co-tenant, only when he receives money or something else given or paid by another, which all the tenants are entitled to in proportion to their interest as such, of which one receives more than his just share, and not when he merely has the sole occupation and enjoyment of the property, even though by his own industry skill and capital he makes a profit by such occupation and enjoyment and takes the whole profit to his own use (3 Rob. Prac. New Ed. 173). Before this decision, which settled the construction of this statute in England, the preponderance of judicial opinion there did not accord with this construction. [V. C.

Wigram's opinion in *McMahon* v. *Burchell*, 3 Hare 97 (25 Eng. Ch'y R.) decided in 1843; *Ld. Ch'r Cottenham*, 2 Phill. 127 (22 Eng. Ch'y R.) V. C. Shadwell in *Henderson* v. *Eason*, 15 Sim. 303 (38 Eng. Ch'y R.) decided in 1846; *Eason* v. *Henderson*, 12 Ad. & El. (N. S.) (64 E. C. L. 986), decided in 1848]. But after a very careful review of the whole subject the Court of Appeals of Virginia in the case of *Early* v. *Friend*, 16 Gratt. 21, decided in 1860, overruled the decision in *Eason* v. *Henderson* and held, that the English construction of the statute was erroneous, and that

1. One tenant in common may maintain a suit in equity against his co-tenant, who has occupied the *whole* of the common property, for an account of rents and profits.

2. Whenever the nature of the property is such as not to admit of its use and occupation by several, and it is used and occupied by one only of the tenants in common, or, whenever the property though capable of use and occupation by several, is yet so used and occupied by one as in effect to exclude the others, he receives more than comes to his just share and proportion in the meaning of this statute.

3. When the common property is rented out by one tenant in common, he is accountable to his co-tenants for their share of the rents, which he has received. And when he occupies and uses the whole property himself, he is liable to his co-tenants for a reasonable rent for it in the condition, in which it was, when he took possession.

4. Interest is to be paid upon the rents found due from the tenant in common in possession to his co-tenants.

Prior to that this construction of the statute had been acted on, as though it were the law, without question in *Ruffner* v. *Lewis*, 7 Leigh 720. See also *Thompson* v. *Bostick*, 1 McMul. Eq. 75, decided in South Carolina in 1830; *Holt* v. *Robertson*, Id. 475; *Hancock* v. *Day*, Id. 69; *Sargent* v. *Parson*, 12 Mass. 149; *Wheeler* v. *Home*, Willes. 208; *Sturton* v. *Richardson*, 13 Mee. & W. 17 (79 E. C. L. 718). The principles laid down in *Early* v. *Friend*, 16 Gratt. were again followed in *Graham* v. *Pierce*, 19 Gratt. 28, decided in 1864. The first of these cases decided in 1860 is a binding authority upon us; and I am satisfied, that it is the just and true exposition of our statute.

76

Applying the principles of law laid down in that case to the one before us, as the vendees of Hopwood as tenants in common were entitled to one moiety of a tract of more than three hundred acres, and they never used or occupied in any manner more than about one hundred acres, and their use and occupation of this one hundred acres in no manner excluded the other tenants in common from a like use and occupation of the remainder of the tract, which was equally desirable for a like use, they can not be held to have received more than came to their just share and proportion under the true meaning of the statute. Had they rented out any portion of this land held in common, the case would have been different, and they would have been properly chargeable with one-half of the rents, they so received, as by receiving more than one half of the rents from other persons they would have received within the meaning of the statute more than their just share and proportion. The case of *Ruffner* v. *Lewis*, 7 Leigh 720, 743, 744, may also be cited as showing what expenditures for permanent improvements should be allowed to a tenant in common, when they are to be offset against rents and profits received by him. The opinion in that case consists with the views, which I have expressed, varied by the fact, that in that case the tenant was justly liable to be charged with the rents and profits of the common property, while the vendees in this case are not so liable.

Is there any other credit, to which the vendees of Hopwood are entitled, which was not allowed them by the court below? They were entitled to have repaid to them all clerk's and surveyor's fees paid by them in the ejectment suit brought by Bennett against them in the United States District Court. The Circuit Court should have directed a commissioner to ascertain this amount and also the enhanced value of the entire tract of land by reason of the improvements put upon it by the vendees, as of the date when the said deed was made to Bennett of the undivided moiety of the land, that is, prior to February 19, 1870. And, if the vendees did pay any of the costs of this suit, as it was done in the necessary defence of the title to the property, which Hopwood had covenanted to make good to them.

they were entitled to be credited by the amount of the costs of the suit proven to have been paid by them; but they were not entitled to be paid the $50.00, which they allege was due to Hoffman as their counsel in the cause. It was not their duty to employ counsel in that case but the duty of their vendor or his principals, the widow and heirs of Hays, who claimed the entire tract of land. Nor were they entitled to any credit for costs paid in the unlawful detainer case brought by them against Longwood. That suit would not, if it had been decided in their favor, have established their title to the land or that of their vendor; and, so far as the record shows, it was brought of their own accord and after the incurring of the costs it was dismissed by them. I can see no propriety in charging these costs to Hopwood. Neither he nor those, he represented, were benefitted by the proceeding; nor would they have been, had it terminated differently. If such a proceeding had to be instituted, it should have been done by the widow and heirs of Hays, if they chose to do it, not by these vendees.

There was no error in charging the vendees with interest on the unpaid purchase-money, as it was charged in the commissioner's report. No abatement should be made of this interest because of any abandonment of the land by the vendees.

There was no error in charging the vendees, the equitable owners of the land, with the taxes paid on it by one of the executors of Hopwood in the year 1881. A portion of these taxes was paid to redeem the land, which had been returned delinquent.

The amount abated by the court below from the purchase-money due on the land because of deficiency in quantity was correct.

The court also in the decree of March 26, 1883, properly adjudged, that the two undivided third parts of this land owned by Joseph Dodson's heirs and Waldeck should first be sold to pay whatever was due on it; and that the remaining one undivided third belonging to Schaefer should not be sold, unless it was necessary in order to raise the requisite amount to pay the liens on the land, as Schaefer had more than paid his proportion of the purchase-money.

The decree therefore of March 26, 1883, must be in all respects affirmed except that portion of it, which adjudges, that as a vendor's lien on the land there was due after deducting payments and abatement because of deficiency in the quantity of the land a balance of purchase-money on the sale to Dodson, Waldeck and Schaefer principal and interest, the sum of $943.96 with interest thereon from March 26, 1883, which portion of said decree must be reversed;— and the court, when this cause is remanded, must refer it to a commissioner to ascertain correctly the amount of the vendor's lien or balance of the purchase-money due after making the abatements and credits above directed and in the manner above indicated. But the reversal of this portion of the decree under our statute must not be held to affect the title or rights of the purchaser, Bennett, of the two undivided third parts of the land; and the decree of June 25, 1883, must be affirmed in all respects; and the appellants must recover of the appellees, the heirs of Hopwood, their costs in this Court expended; and this cause must be remanded to the Circuit Court of Lewis county to be further proceeded with according to the principles laid down in this opinion and further according to the principles and rules governing courts of equity.

REVERSED IN PART. REMANDED.

# CHARLESTON.

